944 F.2d 901
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
CHRIST COLLEGE, INC., Robert L. Thoburn, Rosemary S.
Thoburn, John M. Thoburn, Lloyd L. Thoburn, Thoburn Limited
Partnership, Glenn T. Dryden, Judy K. Dryden, Dorothy L.
Thoburn, an infant, by Lloyd L. Thoburn, her next friend,
Plaintiffs-Appellants,
v.
BOARD OF SUPERVISORS, FAIRFAX COUNTY, the Town of Vienna,
Virginia, a Municipal Corporation, Vienna Board of Zoning
Appeals, Joseph Alexander, Sharon Bulova, Thomas M. Davis,
III, Katherine K. Hanley, Gerald Hyland, J. Hamilton
Lambert, Elaine McConnell, Audrey C. Moore, Martha V.
Pennino, Lilla Richards, Defendants-Appellees.
 No. 90-2406.
 United States Court of Appeals, Fourth Circuit.
 Argued April 8, 1991.
Decided Sept. 13, 1991.
As Amended Oct. 28, Oct. 31, and Nov. 21, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-1131-A)
 Argued: Richard J. Leighton, Leighton & Regnery, Washington, D.C., for appellants; James Patrick Taves, Senior Assistant County Attorney, Fairfax, Va., for Fairfax County Appellees; Warren Hunter Britt, Parvin, Wilson, Barnett & Hopper, Richmond, Va., for Town of Vienna Appellees.
 On Brief: Alfred S. Regnery, Dan M. Peterson, Susan K. Anthony, Leighton & Regnery, Washington, D.C., for appellants; David T. Stitt, County Attorney, Mark B. Taylor, Assistant County Attorney, Fairfax, Va., for Fairfax County appellees.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, WILKINSON and HAMILTON, Circuit Judges.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 This is an appeal from a directed verdict by the District Court for the Eastern District of Virginia, dismissing the claims of the operator of a for-profit Christian school, and related parties, under 42 U.S.C. § 1983. Appellants contended, in essence, that they had been denied their constitutional rights to free exercise, equal protection, and substantive due process, as well as their right to be free of an established religion, as a result of their being denied permission to operate or build a schoolhouse at various locations in Fairfax County and the Town of Vienna, Virginia. Because we conclude that the various zoning and public health and safety policies at issue here did not violate the constitutional rights of any of the appellants, we affirm.
 
 
 2
 * In 1961, Robert L. Thoburn and his wife, Rosemary, started the Fairfax Christian School (FCS) in what was then the town of Fairfax. Thereafter he and his various familial associates operated the school on various properties in the Northern Virginia area. FCS was moved to Fairfax County in 1964 and was located on Popes Head Road by virtue of a special permit from the County Board of Zoning Appeals (BZA). The school later received other special permits from the BZA authorizing expansion of the FCS facility. FCS was operated at this location for twenty years, by which time enrollment exceeded 500 students. In 1984, the Thoburns sold the Popes Head site for $3 million. At the time they sold the site, the Thoburns had not made any final arrangements for relocating the school.
 
 
 3
 In February 1985, the Thoburns completed the purchase of about sixty acres of property in the Oakton area of Fairfax County. The Oakton property was zoned R-1, residential, one dwelling per acre. Although Fairfax County permits a school to operate on any property zoned for commercial or industrial use as a matter of right it requires that a school obtain a special exception to the zoning laws before it may locate in an area zoned residential. Thoburn submitted an application for a special exception shortly after completing the Oakton purchase, seeking permission to operate FCS on a forty acre portion of the Oakton property. The County's planning staff and the Planning Commission recommended denial of the application on several grounds, including the fact that the density of the use would violate the county's Comprehensive Plan, the application did not satisfy all applicable zoning standards, and that it proposed a major disturbance of an established Environmental Quality Corridor. Among the concerns noted was the Thoburns' plan to clear and grade large areas of the floodplain for the construction of ballfields. The County Board of Supervisors held a public hearing and a month later, on a 4-4 vote, rejected the application for a special exception.
 
 
 4
 In February of 1987, Thoburn filed a second application for special exception for the Oakton site. This new application was substantially similar to the first submission, contemplating the same ballfields across the floodplain and a similarly formidable projected school population of 576 students. Again the Fairfax County planning staff and Planning Commission recommended denial of the application. After a public hearing, the Board of Supervisors again denied the request, this time on a 5-4 vote.
 
 
 5
 In search of a temporary home for FCS after the sale of the Pope's Head property, the Thoburns leased portions of Jerusalem Baptist Church and Temple Baptist Church in Fairfax County as interim locations for the school. In early 1988, the Fairfax County Office of Assessments sent a letter to Jerusalem Baptist Church inquiring into the lease arrangements between the church and FCS.[1] After this inquiry regarding the church's tax-exempt status, Jerusalem Baptist decided not to renew its lease to FCS.
 
 
 6
 To provide another temporary home for the school, the Thoburns began renovating three houses they owned on Hunter Mill Road. This area was zoned R-E, residential estate, a designation which allows no more than one dwelling per two acres. Thoburn applied for, and received, residential building permits to perform this work. His plans, submitted for the purpose of receiving the building permits, showed bedrooms, living rooms, and other residential spaces, rather than classrooms. Thoburn admitted, however, that he never intended to use these renovated buildings for residential purposes but rather intended them to function as a school facility for FCS. The modifications were performed up to the higher standards set for commercial property, however, and included installation of fire alarms, exit signs, and fire rated doors.
 
 
 7
 In late August 1988, the Fairfax County Executive learned that the Thoburns planned to open a school on the Hunter Mill Road site without obtaining a special exception to the local zoning regulations. On September 1, 1988, the County Fire Marshal, the Building Official, and the Zoning Administrator filed suit in the county circuit court to enjoin Thoburn from opening FCS at Hunter Mill without obtaining a special exception or in violation of the building code. After a hearing on September 13, 1988, the court enjoined the Thoburns from operating the school on the site until it received county approval. At that time, the circuit court considered free exercise and equal protection claims brought by Thoburn but concluded that no constitutional violations had occurred. Further, the court held that if the court allowed the school to operate, "the students would be placed in a hazardous situation, which would be a danger to their health, to their safety and to their welfare." The court added that the Thoburns and FCS were "responsible for creating this situation in that they have failed to comply with state and local law."
 
 
 8
 The Thoburns then decided to operate FCS in Vienna Assembly of God Church (Virginia Assembly). Virginia Assembly is located in Vienna, Virginia, which is in turn located in Fairfax County. Vienna has its own Town Council, Board of Zoning Appeals, and Zoning Ordinance. On July 20, 1988, the Town Board of Zoning Appeals approved a conditional use permit for 49 students in the Virginia Assembly basement. On September 19, 1988, the Thoburns applied for a temporary use permit for 175 more students. The next day, without having received approval of the temporary use permit application, lacking occupancy approval for the initial forty nine students, and without consulting the fire marshal, the entire Fairfax Christian School was moved into the Virginia Assembly building. Two days later, a county fire technician inspected the Virginia Assembly and ordered FCS to evacuate the premises. Despite the evacuation order, FCS remained open and students continued to attend school at the Virginia Assembly site. Consequently, on September 23, the Town of Vienna sued in county circuit court to enjoin the further operation of FCS in the Virginia Assembly facility, absent necessary permits and safety approval. The school continued operation until the court finally granted an injunction against further use of the church. Two weeks later, FCS was granted temporary permission to operate at Virginia Assembly after it had substantially complied with all zoning and building code requirements. FCS received a permanent use permit for 174 students on May 17, 1989.
 
 
 9
 On December 9, 1988, the Thoburns applied for a special exception for the Hunter Mill site. The application included a request to use the property for FCS during the day, for Christ College during evenings, and by Mrs. Thoburn for her adult literacy classes on weekends. The County planning staff recommended approval with certain conditions, and the Board of Supervisors subsequently approved the Hunter Mill special exception on May 8, 1989 with certain limitations on the use of the property. The exemption was only approved as to FCS; the exemption did not authorize use of the site for either Christ College classes or Thoburn's adult literacy classes. In addition, the Supervisors attached certain public safety conditions to the permit which, by the fall of 1989, FCS had not yet satisfied. At the time of trial, FCS had not been able to obtain final zoning permission for the property.
 
 
 10
 The Thoburns, joined by Glenn T. and Judy K. Dryden, parents of FCS students, and Christ College, as plaintiffs, then brought this action under 42 U.S.C. § 1983 against Fairfax County, the Town of Vienna, the Town Board of Zoning Appeals, and various county and Town officials alleging violations by the defendants of the plaintiffs' constitutional rights to due process, equal protection, and free exercise, as well as violations of the first amendment prohibition on the establishment of religion. After plaintiffs presented their case at trial, defendants moved for a directed verdict on all issues. The district court granted this motion and plaintiffs now appeal.
 
 II
 
 11
 Appellants' first contention is that the district court erred in directing a verdict on the free exercise issue. They argue that the zoning and fire safety policies of the county and the town impinged on their first amendment rights to the free exercise of religion. Their claim is based on their reading of Sherbert v. Verner, 374 U.S. 398 (1963). There, the Court held that whenever a governmental action "burdens" the free exercise of religion, the action must be justified by a compelling governmental interest. Id. at 402-03. The decision was groundbreaking in that it recognized for the first time that a governmental action which was facially neutral, but had the effect of impairing the free practice of religion, would receive strict scrutiny. More recently, however, the Supreme Court has begun to rethink its fundamental approach to the free exercise clause.
 
 
 12
 In Employment Division v. Smith, 110 S.Ct. 1595 (1990), the Court held that a facially neutral criminal law which has the incidental effect of impairing free exercise of religion is not subject to Sherbert 's rigorous compelling interest analysis. Id. at 1603. The Court suggested that such scrutiny might be reserved for only those criminal regulations which implicate both free exercise and some other fundamental right, such as free speech, free press, or the right of a parent to educate his or her child. Id. at 1601-02. The court did not address, however, the continued vitality of Sherbert in free exercise challenges which, like this one, involve non-criminal state regulation.
 
 
 13
 Appellants, perceiving that their free exercise claim might be cast into doubt by Employment Division v. Smith, suggest that the various actions at issue here impaired both free exercise rights and the right of the parents of FCS students to educate their children as they see fit. They therefore contend that, even if we were to expand Employment Division 's analysis into a non-criminal context, their claim is exactly the sort of hybrid still subject to strict scrutiny under Employment Division. We need not, however, decide whether appellants' claim is indeed a hybrid, under Employment Division, or even whether Sherbert remains good law with respect to neutral, noncriminal state regulations. We conclude that appellants failed to establish the first element in any free exercise claim; they have not proved that the zoning laws or fire codes burden their exercise of religion. We begin by considering their claims vis-a-vis the zoning provisions.
 
 
 14
 In analyzing appellants' critical failure of proof as to these, it may be helpful to hypothesize ways in which zoning laws might conceivably burden rights to the free exercise of religion through the operation and use of such schools as FCS. The most obvious way of course would be by absolutely preventing any property's use for such purpose. Fairfax County zoning provisions do not prohibit the operation of private, or parochial, schools by any such blunt means. The zoning provisions in fact permit such a school to be located in either commercial or industrial zones without any special exception. In addition, with a special exception, such schools may also be located within residential zones.
 
 
 15
 Beyond this most obvious way of burdening such rights, they might conceivably do so by preventing use of certain property having particular religious significance. Less conceivably, but possibly, they might do so by curtailing particular uses having special religious significance. But appellants have not shown that conformance to Fairfax's zoning regulations would in these or any other way impair any aspect of anyone's free exercise of religion. They have not shown how their rights may only be exercised in a facility located in a residential zone, nor that conforming to the special exception requirements laid down by Fairfax would in any constitutionally significant way burden those rights.
 
 
 16
 Unquestionably, Fairfax's zoning laws made it more difficult for FCS to be located on property of the Thoburns' choice. The fact that local regulations limit the geographical options of a religious school, however, does not prove that any party's right to free exercise is thereby burdened. There must at least be some nexus between the government regulation--here, a zoning law--and impairment of ability to carry out a religious mission. It is not enough that an entity conducting a religious program or mission would prefer to locate on residential property. That preference must be linked to religious imperatives. No such link was proved here and the court was correct in concluding that the zoning regulations did not burden appellants' free exercise of religion.
 
 
 17
 Similarly, appellants failed to establish how conforming to local fire and safety codes could impair the religious mission of FCS. As we have noted, regulations "manifestly and properly concerned only with the health, safety, and welfare of children" cannot "be held to impinge on any currently known or practiced religious beliefs under free exercise protection." Forest Hills Early Learning Center, Inc. v. Lukhard, 728 F.2d 230, 244 (4th Cir.1984). Lacking any such evidence on the record, we affirm the district court's decision rejecting appellants' free exercise claims.
 
 III
 
 18
 Appellants next argue that zoning exemptions were handed out in a discriminatory fashion and that denial of theirs constituted a violation of the equal protection clause. While the equal protection clause is generally reserved for challenges to governmental policies which are discriminatory on their face, such claims may be maintained even when an action is neutral on its face if the statute was motivated, in whole or in part, by a discriminatory purpose or intent. Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 265-68 (1977).
 
 
 19
 One basic fact must be proved, however, to succeed in any such equal protection challenge. A plaintiff must establish that he was subjected to discriminatory treatment vis-a-vis another similarly situated party. It is this first, essential fact that appellants were never able to establish at trial, specifically that they received different, inferior treatment in their efforts to receive zoning approval than did other similarly situated private schools. As the district court pointed out, FCS was entitled to location in commercial and industrial zones as a matter of right, and each time the Thoburns complied with the building or zoning requirements in Vienna or Fairfax, they were issued a permit to operate on residential property.
 
 
 20
 Even if appellants had been able to prove some level of disparate treatment, they were unable to establish any religious animus on the part of the town or the county. Given that the laws at issue here are facially neutral, evidence of such animus would have been essential to establish an equal protection claim. The statement of County Supervisor Alexander who cast the pivotal vote in 1987, clearly suggests, however, a lack of religious animus. He stated:
 
 
 21
 I think that the school is a good school. I think there's no question about the fact that it's a good Christian school and we need those in this County, without any doubt, and I'm in favor of that....
 
 
 22
 'The major environmental concern related to this proposed development is the lack of protection of the environmental quality corridor of Rocky Branch.... This development cannot be considered to be environmentally sensitive, nor does it help preserve the ecological integrity of the Difficult Run watershed'....
 
 
 23
 [The Planning Commission Report] goes on to say a number of measures which would have to be taken in order to make [the FCS proposal] compatible [with the environmental concerns of the Comprehensive Plan]. None of these measures have been taken....
 
 
 24
 In fact, appellants did not present any evidence at all of legislative animus toward religion or any religious group. In light of appellants' failure to establish either disparate treatment or discriminatory animus, the district court rightly ruled that their equal protection claim failed as a matter of law.
 
 IV
 
 25
 Appellants next claim that the zoning process violated their substantive due process rights. We have held that "where there is fairly alleged a basis for finding either 'abuse of discretion [or] caprice in [a] zoning administrator's refusal to issue' a ... permit, a Fourteenth Amendment claim is properly stated." Marks v. City of Chesapeake, 883 F.2d 308, 311 (4th Cir.1989), quoting, Scott v. Greenville County, 716 F.2d 1409, 1419 (4th Cir.1983). Further, we have noted "that government officials simply cannot act solely in 'reliance on public distaste for certain activities, instead of on legislative determinations concerning public health and safety [or otherwise] dealing with zoning.' " Marks, supra at 311, quoting, Bayou Landing, Ltd. v. Watts, 563 F.2d 1172, 1175 (5th Cir.1977). In essence, the appellants must prove that the town and county's land use decisions were "arbitrary and capricious." See Scott, supra, at 1420 n. 14.
 
 
 26
 Appellants principally rely on our decision in Marks v. City of Chesapeake, arguing that the various local officials here acted out of arbitrary dislike for FCS. Marks involved a palmist applying to obtain a conditional use permit. The city and its elected representatives initially supported allowance of the permit. Only after certain local citizens displayed overt religious hostility to the presence of the palmist did the city government shift positions, opposing the grant of a permit. In Marks it was easy to isolate the cause of the city's decision to deny the permit. Until the citizens bared their arbitrary religious hostility to the palmist, the city moved smoothly to approve a permit for him. After the citizens spoke out, the city moved equally quickly in rejecting the permit request.
 
 
 27
 This case is fundamentally different from Marks. The various special exception applications in this case were reviewed thoroughly by the Fairfax land use experts. Both the Planning Commission and the professional planning staff continuously opposed granting the exemptions for the proposed uses suggested by the Thoburns. The Planning Commission offered legitimate land use explanations for their decisions: protecting environmental quality, controlling storm water runoff, maintaining population density, protecting the comprehensive plan, and preventing development so intense that it was inconsistent with the development of the adjoining area. Reviewing the transcript of the Planning Commission meeting, it is clear that the only considerations discussed were legitimate land use issues. Religion was not discussed. Similarly, the discussion at the 1987 Board of Supervisors meeting, in which the Board voted 5-4 to reject the proposal, indicates no religious animus. Supervisor Hanley explained:
 
 
 28
 The issues before us are land use issues, not religious church related issues, not political issues. This issue before us is not are schools allowed in residential areas, it is rather is this proposal appropriate in this location.
 
 
 29
 .............................................................
 
 
 30
 ...................
 
 
 31
 * * *
 
 
 32
 I cannot in good conscience recommend that the Board allow by its discretion through the purposeful granting use of a special exception something that we know is in violation of the master plan, that we know will do environmental damage and could set a precedent in a residential area.
 
 
 33
 This is an area where the plan recommends lower density than even the zoning allows.
 
 
 34
 Likewise, the comments of Supervisor Alexander, infra at 9, indicate that the board acted on the basis of legitimate land use considerations, not on the basis of whim, arbitrary desires, or caprice.
 
 
 35
 Based on the record at trial, therefore, appellants did not prove that their applications were denied arbitrarily or capriciously. Similarly, Vienna's actions with respect to Virginia Assembly were based on rational health and safety concerns.[2] Lacking evidence that plaintiffs' substantive due process rights had been violated, the court correctly granted a directed verdict on this claim.
 
 V
 
 36
 Appellants next claim that the various zoning and safety regulations violate the establishment clause because they require excessive entanglement between church and state. In dismissing all of the appellants' claims the district court did not explicitly address the establishment clause issue. Given that the court plainly granted a directed verdict with respect to all of appellants' claims, this issue is appropriately before us.
 
 
 37
 The Supreme Court has addressed explicitly the issue whether and how zoning and fire and safety regulations may violate the first amendment's establishment clause. As the Court stated in Tony and Susan Alamo Foundation v. Secretary of Labor, "the Establishment Clause does not exempt religious organizations from such secular governmental activity as fire inspections and building and zoning regulations." 471 U.S. 290, 305 (1985); see also First Assembly of God v. City of Alexandria, 739 F.2d 942, 944 (4th Cir.1984). The Establishment Clause simply does not restrict either Fairfax or Vienna from making land use decisions, and we affirm on this issue as well.
 
 VI
 
 38
 Appellants next argue that the trial court abused its discretion by excluding relevant evidence at trial. First, they contend that the court erred in keeping out evidence comparing the siting of public schools and other governmental buildings to Fairfax County's decision rejecting the Thoburns' various special exception applications. The court found that since the government buildings--including the public school--served different uses and were sited pursuant to different processes than FCS, the comparison was of no relevance. The court was correct in this assessment.
 
 
 39
 First, any public facility is required by law to be in substantial compliance with the Comprehensive Plan. If conformity is lacking, the Board of Supervisors must amend the Plan, following public hearings and recommendation from the Planning Commission. Second, the Board of Supervisors and Planning Commission must advertise, conduct public hearings, and approve any public facility to be added to the County's Comprehensive Plan. Notably, unlike the two buildings appellants consider most relevant to their own claims--the Government Center and Pender/Franklin Elementary School--the Thoburns' proposed uses did not conform to the Comprehensive Plan.
 
 
 40
 In addition, FCS serves a very different purpose from these government buildings. The differences between FCS and the Fairfax County Government Center are evident. FCS is also not comparable to a public elementary school. A public school must serve all children in a given geographical region. It must be located in areas reflecting the concern of geographical proximity. In addition, the Pender/Franklin Elementary site was not located in a floodplain or an environmental quality corridor--both significant difficulties in the FCS Oakton site. The court did not abuse its discretion in excluding evidence relating to these properties.
 
 
 41
 Appellants next complain about the exclusion of evidence relating to the land use applications of other private schools. First, they argue that evidence relating to the zoning violations of Sunrise Country Day School (SCDS) should have been admitted. SCDS is located near the proposed FCS site at Hunter Mill Road. It was found in violation of its zoning permit during the same year that Fairfax County filed suit against the Thoburns to preclude their opening of school. No suit was filed against SCDS. The district court noted that, as an operational school, SCDS was allowed time to correct zoning violations of its already approved use permit. The court found that FCS was fundamentally different in this respect, in that FCS sought to begin operation in violation of zoning regulations. This distinction was a reasonable one. The court did not abuse its discretion in excluding evidence regarding the SCDS property.
 
 
 42
 Appellants argue that evidence regarding the county's decision to provide special exceptions for Flint Hill Preparatory School and Potomac School, two other private schools, ought to have been admitted. After voir dire, the court found that these properties were not similarly situated with the Oakton property. With respect to Flint Hill, the court found that unlike the Oakton Property, Flint Hill (1) does not contain a floodplain; (2) is located adjacent to commercial, industrial, and high-density residential zones; (3) is on a site planned for greater development density and (4) fronts on roads with greater traffic than the roads near the Oakton property. Similarly, the court found that unlike FCS, Potomac School: (1) was established prior to the special exception requirements of the Zoning Ordinance; (2) did not seek permission to build ballfields in the floodplain; (3) received a special exception conditional on the school's granting of a conservation easement; and (4) is surrounded by properties with up to six times the density of the area surrounding the Oakton property.
 
 
 43
 FCS is dissimilar from these other schools in critical respects rightly relied upon by the district court. The court did not err, therefore, in precluding evidence of the treatment accorded differently situated properties.
 
 
 44
 Appellants next argue that the court erred when it excluded the testimony of county policymakers for the purpose of determining their state of mind when they voted to deny FCS a special exception. This claim reflects a bald reversal of strategy for appellants. Arguing for admission of this evidence below, they contended that it was necessary to show that the legislators utterly failed to take religion into account when they voted to deny the special exception. This testimony, appellants argued, would prove their contention that, by failing to consider religious concerns in any way, the supervisors' decision to deny the special exception did not represent the least religiously intrusive alternative and was thus in contravention of the free exercise clause. The court was disinclined to allow legislators to testify with respect to legislative intent, but the defendants stipulated to the fact that the legislators did not take religion into consideration at the time of their votes. Appellants now take a different tack, contending on appeal that this testimony should have been allowed for the purpose of proving that the legislators did, in fact, take religion into account. The district court obviously did not err in declining to admit this testimony under the circumstances of its proffer at trial. Just as obviously, appellants cannot be allowed to challenge that ruling on appeal on a diametrically opposed position to the only one taken in the district court.
 
 
 45
 Appellants argue that the court erred by excluding evidence of what is known as the "Carl Sell" incident. They proffered that an eyewitness would testify that Carl Sell, Planning Commissioner for Supervisor Joseph Alexander, offered to deliver Alexander's vote in favor of a special exception for FCS if Thoburn would, in exchange, withdraw his candidacy for county supervisor. At the time of the 1987 vote, Thoburn was running for the Republican nomination for supervisor against Nancy Falck. Shortly after this alleged discussion, Alexander cast the fifth and decisive vote denying FCS a special exception for the Oakton property. The court excluded this evidence concluding, among other reasons, that the marginal probative value of such testimony with respect to appellants' claims would be significantly outweighed by the substantial prejudicial effect of such testimony. The court's assessment of this proffer of evidence under Rule 403 of the Federal Rules of Evidence did not constitute an abuse of discretion.
 
 
 46
 Appellants contend that the court erred by excluding evidence relating to damages and burden on religion. They sought to introduce newspaper articles, tax forms, and enrollment data to show that the zoning decisions caused bad press, steep decreases in enrollment, and a substantial decline in revenue for the school. The court justifiably excluded evidence of enrollment and income declines because it was not produced to the defendants in a timely fashion. It correctly excluded the newspaper articles as cumulative and repetitive since other witnesses testified to the same effect as the articles. These rulings did not constitute any abuse of discretion.
 
 
 47
 Appellants contend that the court erred by excluding the testimony of all their proffered experts but one. The court repeatedly requested appellants to provide the names of the experts to be used at trial, as well as interrogatory answers relating to the scope of their testimony. Appellants did not comply with the court's rulings in a timely fashion. The court therefore acted within its discretion in limiting them to only one expert. Indeed, appellants do not indicate how these experts would have made a difference to their case. The district court did not abuse its discretion in limiting appellants' proffer of expert witness testimony.
 
 
 48
 Appellants contend that the district court erred in failing to grant a new or amended scheduling order, and that the court erred in prohibiting them from deposing the county and town attorneys and in excluding their testimony at trial. Both of these orders were entered by magistrates. In both cases, FCS failed to file any objections to these orders as required by 28 U.S.C. § 636(b)(1). The objections were therefore waived. United States v. Schronce, 727 F.2d 91 (4th Cir.1984).
 
 
 49
 Appellants argue that the court erred in failing to compel defendants to make discovery. In response to voluminous discovery requests, the defendants produced a substantial quantity of documents. Thoburn, for instance, obtained over 22,000 copies of documents from the files of Fairfax County alone. Indeed, the appellants received sufficient discovery to list approximately 1400 trial exhibits. Appellants, meanwhile, failed to proceed with discovery in a timely manner. A magistrate requested that the appellants narrow the scope of their discovery requests, but they did not do so until after the discovery period had concluded. Because the appellants received substantial discovery, and because their failure to obtain additional discovery was substantially their own responsibility, we affirm the district court's denial of their motion to compel further discovery.
 
 
 50
 Finally, appellants argue that Christ College was wrongfully dismissed as a plaintiff for lack of standing. The Thoburns had agreed to permit Christ College to conduct evening classes at the Hunter Mill Road site after that campus opened. The court found that Christ College had no lease agreement with FCS and had suffered no injury or threatened injury. We agree with the district court's conclusion that the amended complaint failed to state any injury suffered by Christ College.
 
 
 51
 AFFIRMED.
 
 
 52
 WILKINSON and HAMILTON, Circuit Judges, joined.
 
 
 
 [1]
 Under Virginia law, tax exempt property leased for profit may not retain full tax exempt status. Va.Code § 58.1-3603
 
 
 [2]
 We also note that Vienna's decisions to enforce the safety codes at Virginia Assembly were ratified by a circuit court judge